IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ISATU MANSARAY | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. WGC-13-902 |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Isatu Mansaray ("Ms. Mansaray") brought this action against the Washington Metropolitan Area Transit Authority ("WMATA") alleging negligence and seeking $20,000.00 in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 11. The case thereafter was referred to the undersigned. *See* ECF No. 13. Pending before the court and ready for resolution is WMATA's motion for summary judgment (ECF No. 21). Ms. Mansaray filed an opposition (ECF No. 24). The deadline for WMATA to file a reply elapsed on December 5, 2013. No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011).

## BACKGROUND[1]

On May 24, 2011 Ms. Mansaray stood at a bus stop on Cherry Hill Lane in Laurel, Maryland, along with at least two other individuals, waiting for the bus. Between 11:25 - 11:30 a.m., a WMATA bus, Route 89M, traveling to Greenbelt, arrived at the bus stop. Ms. Mansaray

---

[1] In determining whether the moving party has shown there are no genuine issues of any material fact, this court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998).

1

was the last individual at the stop to board the bus. Ms. Mansaray described the sequence of events.

> A: When I got in, we have a [SmarTrip] card that we slot in the bus. So as soon as I pressed my [SmarTrip] card I was going in to look for a seat. I was looking onto the bus looking for a seat. The driver took off like in an aggressive way. He made a solid turn right. So he moved quickly and the turn was – – he didn't wait for me to sit. The turn was sudden. Even though I was holding onto the bar, I struggled and I tried to sit holding onto the bar.
>
> Q: Okay.
>
> A: So I fell down. I fell down.
>
> Q: Okay.
>
> A: When I fell, the passengers in the bus was [sic] yelling that somebody had fallen. He continued to move. People on the bus were yelling and saying, Don't you see that somebody has fallen down, don't you see that somebody has fallen down before he stopped.
>
> Q: Okay.
>
> A: So he continued for a while before he stopped. When he stopped, the people on the bus, passengers, came to help me up. When they were trying to pick me up, I was shouting because I was hurting because I hit myself, so I started crying.

ECF No. 21-1 at 4-5 (Mansaray Dep. 13:22 - 14:22); ECF No. 24-2 at 4-5 (Mansaray Dep. 13:22 - 14:22).

Ms. Mansaray had entered the bus and walked past the designated seating for the elderly and disabled. As she approached the area where regular seating began, the bus operator suddenly drove forcefully. Ms. Mansaray attempted to sit in an available seat but fell as the bus operator drove in a rough manner. ECF No. 21-1 at 6 (Mansaray Dep. 19:15 - 20:19); ECF No. 24-2 at 6 (Mansaray Dep. 19:5 - 20:19).

## JURISDICTION AND VENUE

This Court has original jurisdiction over this civil action based on Federal Question, 28 U.S.C. § 1331, specifically, pursuant to Section 81 of the WMATA Compact, Section 80 Stat. 1350, Pub. L. 89-774 (November 6, 1996), as outlined in Md. Code Ann., Transp. § 10-204(81), which states:

> The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued under this title. Any such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). The court notes WMATA removed this case from state court to federal court. *See* ECF No. 1.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing no genuine issue as to any material fact exists. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

WMATA contends no genuine issues of material fact exist and therefore it is entitled to summary judgment. Specifically, WMATA argues Ms. Mansaray bears the burden of proving negligence. She must demonstrate the movement was not normal, usual or incidental to the normal operation of a bus, but instead was unusual or extraordinary. Ms. Mansaray fails to present such evidence and thus cannot establish WMATA's negligence.

In her opposition Ms. Mansaray claims there is a genuine material factual dispute concerning whether the movement of the bus was unusual or extraordinary. Ms. Mansaray

4

further asserts there is a genuine material factual dispute regarding whether she was completely onboard the bus and at a place of safety. These genuine material factual disputes preclude the entry of summary judgment in favor of WMATA.

To establish a *prima facie* case of negligence under Maryland law, Ms. Mansaray must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (citations omitted). As a common carrier, WMATA owes the highest degree of care for the safety of its passengers. *See Smith v. Baltimore Transit Co.*, 211 Md. 529, 537, 128 A.2d 413, 417 (1957). "'It is not the utmost and highest, absolutely, but the highest which is consistent with the nature of [its] business, and there must be a due regard to its necessary requirements.'" *Id.* (quoting *Smith v. Blue Ridge Transp. Co.*, 172 Md. 42, 49, 191 A. 66, 69 (1937) (internal citation omitted)). WMATA however is not an insurer of the absolute safety of its passengers. *Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 57, 299 A.2d 474, 478 (1973).

When a passenger such as Ms. Mansaray suffers an injury while onboard a common carrier such as a WMATA bus, and the passenger subsequently sues the common carrier alleging negligence, "the pivotal question to determine is whether the act of the common carrier that led to the injury [in this case, the forceful and rough driving], under the circumstances, was a negligent act under the heightened duty of care applicable to common carriers in [the] State [of Maryland]." *WMATA v. Seymour*, 387 Md. 217, 224, 874 A.2d 973, 977 (2005). Maryland law recognizes normal motions or movements incidental to public transportation. "[I]n cases involving injuries caused by the motions or movements of conveyances carrying passengers,

recoveries have been permitted or denied, depending upon whether such motions or movements were unusual or extraordinary, or usual and incident to normal operation." *Retkowsky v. Baltimore Transit Co.*, 222 Md. 433, 440, 160 A.2d 791, 795 (1960).

Before addressing the issue of the motions or movements of the WMATA bus, Ms. Mansaray alleges in her opposition that a genuine material factual dispute exists regarding whether she was completely onboard the WMATA bus and at a place of safety. During her deposition Ms. Mansaray testified that she walked onto the bus, paid the fare with her SmarTrip card, walked past the designated seating for elderly and disabled and as she walked in the area of regular seating, that is when the bus operator drove in a forceful and rough manner causing her to fall. It is undisputed Ms. Mansaray was completely and fully onboard *before* the alleged sudden, forceful movements. Regarding the assertion that Ms. Mansaray was not at a place of safety[2] when the bus moved suddenly and forcefully, Maryland law addresses this issue. "In Maryland, a bus driver is not required to wait until his passengers are seated before starting the bus in operation, unless the passenger labors under some apparent infirmity or disability." *Bradley*, 17 Md. App. at 55, 299 A.2d at 477. Since Ms. Mansaray was well within the interior of the bus when she fell, no evidence supports Ms. Mansaray's assertion that she was not in a place of safety.

It is undisputed, on the date of the incident, Ms. Mansaray was neither infirmed nor disabled.

---

[2] The phrase "place of safety" is used in the case of *Mass Transit Administration v. Miller*, 271 Md. 256, 315 A.2d 772 (1974). In that case the passenger claimed she had a bag in her left hand and a shopping bag in her right hand, along with her purse and bus fare. When the bus arrived and stopped, the passenger placed her left foot on the bottom step. As she placed her right foot on the second step, the passenger claimed the bus took off which caused her to fall. "The pivotal question which emerges then is whether [the passenger] had reached a place of safety, as a matter of law, when the bus began its motion." *Id.* at 262, 315 A.2d at 775. The Court of Appeals of Maryland found , whether the passenger had reached a place of safety was a question of fact, not one of law, and the issue was properly submitted to a jury.

> Q: On that day before getting on the bus did you need a cane to walk to the bus?
>
> A: No, I don't need it. I didn't need a cane.
>
> Q: Did you have any problems with your legs before getting on that bus that morning?
>
> A: Nothing was wrong with me. I walked from home as I normally do to the bus stop.
>
> Q: And I know this seems like a silly question. I'm just asking. Did you need a wheelchair to board or were you using a wheelchair on the morning that you attempted to board the bus?
>
> A: I have never used it and I don't need it.
>
> Q: On the day that you boarded this bus were you able to board the bus without assistance?
>
> A: So since I started that job I've been walking to the bus stop and I didn't need any assistance that day.

ECF No. 21-1 at 4 (Mansaray Dep. 12:13 - 13:7); ECF No. 24-2 at 4 (Mansaray Dep. 12:13 - 13:7).

An able-bodied passenger such as Ms. Mansaray has a duty to protect herself upon boarding a bus.

> [A]fter a passenger is fairly aboard, an operator may resume his ordinary duties as to the vehicle without further concern with the movements of passengers within the car. Conversely, it is the duty of passengers, once on board, to protect themselves against the normal motions of the vehicle incident to public transportation.

*Przyborowski v. Baltimore Transit Co.*, 191 Md. 63, 67, 59 A.2d 687, 689 (1948).

Ms. Mansaray rides the bus daily. She knew she had to protect herself from abrupt movements while riding on a WMATA bus.

> Q: You said you held onto a metal pole; is that right?
>
> A: It's metal. The bus is when you're going in, you have to hold onto the metal, the bars, before you can find somewhere to sit.

7

> Q: Okay. And the reason why you do that is because the bus sometimes would move before you sit down?
>
> A: As soon as you go inside, sometimes they don't wait for you to sit. They start moving, so automatically you grab.

ECF No. 21-1 at 6 (Mansaray Dep. 18:13 - 19:1); ECF No. 24-2 at 6 (Mansaray Dep. 18:13 - 19:1).

> Q: The pole that you were holding onto, did you have to reach up to grab it or was it – – or, you know, was it near your waist?
>
> A: When I was going in, I reached for the one that's up and that's what I was holding.

ECF No. 21-1 at 7 (Mansaray Dep. 26:21 - 27:3); ECF No. 24-2 at 7 (Mansaray Dep. 26:21 - 27:3).

Based on the above, the court finds there is not a genuine material factual dispute as to whether Ms. Mansaray was fully onboard and at a place of safety when the WMATA bus allegedly moved suddenly and forcefully.

The court now turns its attention to the remaining issue, *i.e.,* whether the movement of the bus was unusual or extraordinary. Ms. Mansaray recounted what happened.

> Q: When the bus moved, were you near a seat?
>
> A: When the bus started moving, I grabbed onto the pole stronger because he moved suddenly. And I tried to secure a place as quickly as I can to sit, but he was rough driving.
>
> \* \* \*
>
> Q: Ms. Mansaray, you indicated that the movement of the bus forward caused you to fall. Could you describe in detail the movement of the bus?
>
> A: Like I was going in. I wasn't seated. I was still standing. He moved forcefully and I was swinging and struggling to hold onto the bar. He move[d] like suddenly. I was holding. I was trying to hold on to still my feet, but he moved forcefully. He moved suddenly and he kept moving.

> Q: And did the bus make any turn?
>
> A: Normally we go straight, but he was going, he was driving so rough that I was focused on trying to stay on my feet. But he was driving forcefully and I struggled before I fell because I was trying to grab onto the bar. He was moving, like I was moving from side to side and I struggled to hold onto the bar.

ECF No. 21-1 at 6, 7 (Mansaray Dep. 19:15-19, 27:9 - 28:3); ECF No. 24-2 at 6, 7 (Mansaray Dep. 19:15-19, 27:9 - 28:3).

The only evidence presented by Ms. Mansaray about the bus operator's allegedly forceful driving is her own testimony. *See, e.g., Retkowsky*, 222 Md. at 436, 160 A.2d at 793; *Bradley*, 17 Md. App. at 54, 299 A.2d at 477. No corroborating witness has been presented and deposed. *See, e.g., Washington Ry. & Elec. Co. v. Anderson*, 168 Md. 224, 177 A. 282, 284 (1935) ("Her testimony was corroborated by the witness Shoemaker, who was emphatic in saying, that as the plaintiff was coming up into the car, it moved forward very suddenly with more force than usual."). No evidence has been presented that any other passenger on the bus fell and/or was injured besides Ms. Mansaray as a result of the alleged sudden and forceful movement of the bus. *See, e.g., Seymour*, 387 Md. at 222, 874 A.2d at 976 ("At least one other passenger on the bus that day was also injured because of this incident. . ."). In short, Ms. Mansaray "made no attempt to show any unusual or extraordinary effect upon any other passenger, that there were any spontaneous exclamations of excitement by anyone . . . or that she was thrown or propelled any unusual distance when she fell." *Retkowsky*, 222 Md. at 438, 160 A.2d at 793-94.

Moreover, Ms. Mansaray has not proffered any evidence to explain the behavior of the bus operator. Whether the alleged sudden and forceful movement by the bus operator was due to the bus operator attempting to avoid a collision with another vehicle violating rules of the road, *see, e.g., Smith*, 211 Md. at 533-36, 128 A.2d at 415-17, or was due to the inattentiveness of the

bus operator regarding hazards on the road, *see, e.g., Seymour*, 387 Md. at 235, 874 A.2d at 984, cannot be ascertained.³ The only evidence supporting Ms. Mansaray's allegation that the movement of the bus was unusual or extraordinary is her description of the movement as "sudden," "forceful" and "rough driving."

> "Proof of the negligence of a carrier by the characterization of the manner of stopping or starting a car or bus by strong adjectives or expletives will not generally suffice as descriptions of an act of negligence. This rule has been adopted generally by the courts as a matter of public policy, to avoid having liability based upon a mere expression of feeling on the part of the injured, which the experience of the courts has shown to be oftentimes the exaggeration of self-interest in anticipation of a judgment against a responsible defendant. The courts require that the description or characterization of the negligent cause of harm shall be accompanied by other proof."

*Retkowsky*, 222 Md. at 441, 160 A.2d at 795 (quoting 2 Harvey George Stevenson, *Negligence in the Atlantic States* 1198 (1954)).

Ms. Mansaray has failed to present other proof to accompany her characterization of the movement of the bus. Based on Maryland law, the court finds there is no genuine material factual dispute as to whether the movement of the bus was unusual or extraordinary.

## CONCLUSION

For the foregoing reasons, the court finds there are no genuine issues as to any material fact and WMATA is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately.



| January 10, 2014 | _____/s/_____ |
| Date | WILLIAM CONNELLY |
| | UNITED STATES MAGISTRATE JUDGE |

---

³ "[I]f exigent circumstances require that a common carrier, *being operated normally and safely*, suddenly stops in an attempt to avoid a collision with an unanticipated and dangerous obstacle on the roadway (be it another automobile, a person, substantial debris, etc.), generally the common carrier will not be liable if one of its passengers is injured as a result of the sudden stop that was made to avoid the advent of a possibly more dangerous situation." *WMATA v. Seymour*, 387 Md. 217, 226, 874 A.2d 973, 978 (2005).