IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ISATU MANSARAY           ) | |
| )                        | |
| Plaintiff,    ) | |
| )                        | |
| v.                       ) | Civil Action No. WGC-13-902 |
| )                        | |
| WASHINGTON METROPOLITAN  ) | |
| AREA TRANSIT AUTHORITY   ) | |
| )                        | |
| Defendant.    ) | |
| ) | |

**MEMORANDUM OPINION**

Pending before the court and ready for resolution is Plaintiff's Motion to Alter or Amend Judgment (ECF No. 27). Defendant filed an Opposition (ECF No. 28) and Plaintiff filed a Reply (ECF No. 29). No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011).

**DISCUSSION**

In the Memorandum Opinion of January 10, 2014 (ECF No. 25), this court found Plaintiff Isatu Mansaray ("Ms. Mansaray") was a passenger who fell shortly after she boarded a bus operated by Defendant Washington Metropolitan Area Transit Authority ("WMATA"). According to Ms. Mansaray the bus operator drove the bus in a rough or aggressive manner. The court found Ms. Mansaray was fully onboard the bus before the alleged sudden, forceful movements and thus Ms. Mansaray was in a place of safety. Relying primarily upon *Retkowsky v. Baltimore Transit Company*, 222 Md. 433, 160 A.2d 791 (1960), this court held Ms. Mansaray failed to present other evidence beyond her adjectival description of the movement of the bus. Based on Maryland law, the court found no genuine material factual dispute as to whether the

movement of the bus was unusual or extraordinary. ECF No. 25 at 10. In the accompanying Order of January 10, 2014 (ECF No. 26), the court granted WMATA's motion for summary judgment and entered judgment in favor of WMATA and against Ms. Mansaray.

Ms. Mansaray moves to alter or amend the judgment entered in favor of WMATA on the grounds that this court committed a clear error of law and/or a manifest injustice. Ms. Mansaray contends this court improperly imposed a burden upon her inconsistent with her burden of proof, namely, the failure to proffer any evidence to explain the conduct of the bus driver. "[T]he Court's decision imposes upon the Plaintiff the burden of going beyond proving the extraordinary or unusual movements of the bus, but the added burden of **explaining the bus operator's conduct**. Therefore, to impose this burden on the Plaintiff is a clear error of law." ECF No. 27-1 at 3.

In its Opposition WMATA asserts Ms. Mansaray has misread the court's ruling. "In its ruling, the Court correctly discussed two ways Plaintiff could show that the movement of the bus was unusual or extraordinary . . . An explanation of the bus operator's conduct, if known, is not an extra burden, but an articulated example of how a Plaintiff in sudden start/stop cases can show that a 'definitive factual incident' existed, which would allow the Plaintiff to overcome WMATA's motion for summary judgment." ECF No. 28 at 2.

In her Reply Ms. Mansaray cites, for the first time, the case of *Kaufman v. Baltimore Transit Company*, quoting the following:

> Ordinarily the only direct evidence of the cause of a jolt or movement, and of negligence *vel non*, would be testimony of the operator of the car. But plaintiffs are not required to prove their cases out of the lips of their adversaries, and only occasionally are able to do so. In the absence of such evidence, the results of the movement, upon the passenger in question or other passengers or both, may show the movement to have been unusually violent or sudden as to justify an inference of negligence.

2

197 Md. 141, 146, 78 A.2d 464, 467 (1951) (citation omitted); ECF No. 29 at 3.

However, the *Kaufman* court continues its discussion by stating,

> When a seated passenger is injured by being hurled from his seat against the seat in front of him, it may be inferred that a sudden stop was due to negligence of the operator, in the absence of other circumstances, not including such negligence, which necessitated the stop. *Such an inference must be drawn from facts, not from adjectives or other words used by witnesses to characterize the movement*, *e.g.*, in the instant case, "terrific jolt", "very terrible – – very severe jerk or jolt", "unusually hard jerk."

*Id.* (citation omitted) (emphasis added).

This court was not imposing an additional burden on Ms. Mansaray when it noted Ms. Mansaray had not proffered any evidence to explain the behavior of the bus driver. ECF No. 25 at 9. In the January 10, 2014 memorandum option this court found the only evidence Ms. Mansaray presented concerning the allegedly unusual movement of the bus was her adjectival description. Even before commenting on the absence of evidence concerning the bus operator's behavior, this court noted Ms. Mansaray had not presented and deposed any corroborating witness nor had offered any evidence that another passenger fell due to the sudden movement of the bus or was similarly injured due to the unexpected and forceful movement of the bus. *Id.* This court cited cases with different factual circumstances where there was evidence *beyond* the injured party's adjectival description about a sudden, unexpected or violent movement. This court found Ms. Mansaray did not present evidence *beyond* her adjectival description. Under Maryland law an adjectival description *alone* is not sufficient to establish negligence.

> [T]here was no evidence offered by the appellee to show that the start of the bus as it departed Queenstown was unusual, abnormal or extraordinary. In this State, a passenger cannot make out a valid case of negligence, based on the alleged sudden start or stop of a bus, 'merely by adjectival description of the nature of the sudden start or stop, *in the absence of some definite, factual incident*

> *thereof* which makes it so abnormal and extraordinary that it can legally be found to have constituted negligence in operation.'

*Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 55, 299 A.2d 474, 477 (1973) (citations omitted)(emphasis added).

Furthermore, in her motion to alter or amend judgment, Ms. Mansaray contends this court committed a clear error of law by emphasizing the absence of any corroborating witness to support Ms. Mansaray's testimony that the bus operator was driving forcefully. "However, a corroborating witness was not required; and the relevant inquiry is whether there is a genuine factual dispute regarding the extraordinary or unusual movements of the bus." ECF No. 27-1 at 4.

Ms. Mansaray then notes this court quoted from *Retkowsky*. S*ee* ECF No. 25 at 10. Ms. Mansaray claims the examples given in *Retkowsky* are not exhaustive of ways an injured party can show the movements of a bus were extraordinary or unusual. Thereafter Ms. Mansaray identifies some cases where an injured party failed to hold onto a pole or bar and thus did nothing to protect herself against the movements of an electric car or bus. Unlike those injured parties, in this case, Ms. Mansaray did protect herself against the normal movements of a bus by holding onto the pole. Ms. Mansaray argues she has presented evidence that the movement of the bus was unusual or extraordinary because "the movement of the bus was such that it caused her to go from side to side, it caused her to struggle to stay on her feet, it caused her handbag and purse to fall, it caused the items to fall out of her purse, and it also caused her to fall." ECF No. 27-1 at 6 (citation omitted). Ms. Mansaray proclaims her undisputed testimony about how she was affected by the sudden and unusual movement of the bus, despite holding onto the pole, goes beyond mere adjectival descriptors and therefore raises an inference of negligence. ECF No. 29

at 2, 3-4. Because of this inference of negligence, the Order granting summary judgment in favor of Defendant must be vacated.

This court has reviewed the *Kaufman* case, which neither side mentioned at the summary judgment briefing, as well as cases citing *Kaufman*. In examining this line of cases, this court notes, in some instances, the Maryland courts have found a plaintiff's description of how an allegedly sudden and forceful movement affected her constitutes *some definite, factual incident*. For example in the case of *Kaplan v. Solomon*, Mrs. Solomon, a passenger in taxicab operated by Kaplan, was injured when the taxicab became involved in a three-way collision. The Court of Appeals of Maryland made the following observations:

> The plaintiff testified that Kaplan made a sudden stop. This, in itself, might be termed a mere characterization without probative force. *Cf. Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 145, 78 A.2d 464, 467. But she testified that the nature of the stop was such that she was thrown forward and then back; "* * * at the same time something hit in the back and front and I went forward again and the seat came up on me and I got a pain in my back, * * * I went forward and backward and then I fell and I must have hit some kind of steel * * *." It is obvious that the injury was not due to the stopping but to the blow in the rear. Nevertheless, her testimony permits the inference that the brakes were not applied gradually, and that the blow in the rear followed immediately.

203 Md. 131, 135, 99 A.2d 736, 738 (1953). The Maryland court held Kaplan, the taxicab driver, owed his passenger, Mrs. Solomon, the highest degree of care consistent with his undertaking. The court affirmed the jury's verdict against Kaplan and in favor of Mrs. Solomon.

In another case however the Court of Appeals of Maryland affirmed a trial court's directed verdict in favor of the defendant. Ms. Sunthimer alleges, after boarding a bus and depositing her fare in the box, the bus started to make a turn. The bus then started forward very suddenly, which was unusual, and this motion caused her to fall to the floor. She was close to the driver's seat when she fell. Ms. Sunthimer attempted to grab a hold of the rod in front but

fell and her body twisted. During cross-examination Ms. Sunthimer described the bus as starting "very fast, very sudden." The court observed, "[w]hile there were several passengers on the bus, there was no evidence that any other passenger was affected by, or noticed, the alleged unusual motion of the bus, [Ms. Sunthimer] being the only witness with reference to the claimed negligence of the bus driver." *Sunthimer v. Baltimore Transit Co.*, 217 Md. 52, 53, 141 A.2d 527 (1958). The Maryland court found Ms. Sunthimer raised no novel question and proclaimed her contentions are answered by other decisions of the court including *Kaufman*.

In a case predating *Kaufman* the plaintiff boarded a crowded commuter light rail car and stood in the aisle while using due care. When an employee of the defendant started the rail car, there was a sudden and unusual jerk which threw the plaintiff violently to the floor on her knees. Consequently, the plaintiff's left knee cap was broken. During trial, when asked to explain why the movement was violent, she testified as follows:

> "You know often when a car starts there is a little jerk, and you have to be prepared for this, but this was such a violent jerk that it caused the passengers to scream, Oh!, and it swayed me forward and threw me down on my knees. * * * The conductor knew I fell, the crash was terrific, and everybody in the car heard it. It was as though you would tear a big piece of muslin, and he came to me and said are you hurt, and I said, I don't know, but I think there is something the matter with my knee."

*United Rys. & Electric Co. v. Phillips*, 129 Md. 328, 331, 99 A. 355, 356 (1916). The court explained why the evidence raises the presumption of negligence.

> [W]e think, both upon reason and authority, a sudden jerk of such unusual severity that described in the evidence and manifested by its results is sufficient to raise a presumption of negligence on the part of the defendant . . . The jerk or lurch of the car as described by the plaintiff in this case, judged by its results upon her and upon the other passengers, and apart from the adjectives used by her in describing it, shows it to have been of an unusual and extraordinary character, and so out of the ordinary as to suggest negligence in the management or control of the particular car.

6

*Id.* at 332, 333, 99 A. at 356, 357.

In the *Kaufman* case the plaintiff was a passenger aboard defendant's street car. The plaintiff, who was seated, alleged she was injured when another passenger fell onto her lap. This other passenger lost her balance due to the sudden and terrific jolt of the street car. The passenger who fell had been holding onto the last seat of the car. When the street car gave a jerk, she lost her hold of the seat and fell. At trial during cross-examination however, this passenger acknowledged releasing her hold of the seat to allow someone to pass. She does not believe she was holding the car seat when the street car started. This passenger, the only one directly affected by the jolt, described the street car's motion as "just like it always does when it starts off." The court below granted the defendant's motion for a directed verdict after the close of the plaintiff's case. On appeal the plaintiff claimed negligence may be inferred from the fact that the jolt was violent enough to shake the other passenger from her hold of the car seat. The Maryland court observed it would depend on how tightly the other passenger was holding onto the seat. That court further remarked there was no evidence however that the other passenger was holding onto the car seat.

The plaintiff in *Kaufman* cited the *Phillips* case in asserting negligence may be inferred from the terrific jolt. The Maryland court found the facts of *Phillips* distinguishable. "The spontaneous scream of the other passengers is in striking contrast with the absence of evidence in the instant case that any one else in the crowded car was affected by the jolt." *Kaufman*, 197 Md. at 147, 78 A.2d at 468.

Turning to the facts of this case, Ms. Mansaray testified, on the date of her injury, an unfamiliar bus operator was driving the bus. She described the sequence of events as follows:

  Q: Tell me what happened.

>    A:   So we were sitting in the bus hut waiting and the bus came to me. So everyone had gone in. I was the last one going in. When I got in, we have a [SmarTrip] card that we slot in the bus. So as soon as I pressed my [SmarTrip] card I was going to look for a seat. I was looking onto the bus looking for a seat. The driver took off like in an aggressive way. He made a solid turn right. So he moved quickly and the turn was – – he didn't wait for me to sit. The turn was sudden. Even though I was holding onto the bar, I struggled and I tried to sit holding onto the bar.
>
>    Q:   Okay.
>
>    A:   So I fell down. I fell down.
>
>    Q:   Okay.
>
>    A:   When I fell, the passengers in the bus was yelling that somebody had fallen. He continued to move. People on the bus were yelling and saying, Don't you see that somebody has fallen down, don't you see that somebody has fallen down before he stopped.
>
>    Q:   Okay.
>
>    A:   So he continued for a while before he stopped. When he stopped, the people on the bus, passengers, came to help me up. When they were trying to pick me up, I was shouting because I was hurting because I hit myself, so I started crying.

ECF No. 21-1 at 4-5 (Mansaray Dep. 13:19 - 14:22); ECF No. 24-2 at 4-5 (Mansaray Dep. 13:19 - 14:22).

In response to additional questions, Ms. Mansaray testified about her effort to find a place to sit.

>    Q:   When the bus moved, were you near a seat?
>
>    A:   When the bus started moving, I grabbed onto the pole stronger because he moved suddenly. And I tried to secure a place as quickly as I can to sit, but he was rough driving.
>
>    Q:   Did you fall in the front of the bus, the middle of the bus or the back of the bus?

> A: As you're coming into the bus you have seats on both sides for the elderly and then immediately after those seats going in the bus that's where I fell, so it was towards the front. All front down.
>
> Q: Okay. So where you fell was where the elderly seats ended and where the regular seats began?
>
> A: Yes. Yes, I went past the elderly seats. Immediately after there are regular seats and I was going to try to sit there and that's where I fell.

ECF No. 21-1 at 6 (Mansaray Dep. 19:15 - 20:8); ECF No. 24-2 at 6 (Mansaray Dep. 19:15 - 20:8).

Ms. Mansaray claims the consequences of the bus operator's rough driving upon her, *i.e.*, her struggle to hold onto the bar, the contents of her purse falling onto the floor and her fall, justify an inference of negligence. The court notes, unlike *Phillips*, there is no evidence that other passengers were affected by the "rough driving." Like *Kaufman* the "rough driving" affected Ms. Mansaray only.

Ms. Mansaray argues she protected herself against the normal movements of a bus by holding onto the pole. Per Ms. Mansaray's own testimony, the movement of the bus was *not* normal. She recognized, shortly after she boarded the bus, the operator was driving in an aggressive manner, something she was not accustomed to experiencing. In response Ms. Mansaray held tightly onto the pole. At that moment, under the circumstances, Ms. Mansaray took appropriate action to protect herself.

Ms. Mansaray's fall did not occur as she remained standing, but occurred when she attempted to sit. Ms. Mansaray testified "I tried to sit holding onto the bar" and "I was going to try to sit there and that's where I fell." Despite knowing the bus operator was driving in an aggressive manner, Ms. Mansaray, rather than remain standing, attempted to sit.

Was Ms. Mansaray's attempt to sit rather than remain standing reasonable under the circumstances? In other words, did Ms. Mansaray voluntarily choose to leave a position of safety, *i.e.,* remain standing, holding tightly onto the pole until the bus stopped? Or was Ms. Mansaray attempting to secure a position of safety, *i.e.,* sitting down, while the bus operator was allegedly driving in an aggressive manner? The court finds there is a genuine dispute as to a material fact. The resolution of such a factual dispute is best left to a jury.

For the reason stated above, Plaintiff's motion to alter or amend the judgment will be granted. The court will vacate the Order of January 10, 2014 granting WMATA's motion for summary judgment and entering judgment in favor of WMATA and against Ms. Mansaray. The court will further direct the Clerk to reopen this case. An Order will be entered separately.

  May 19, 2014  
   Date

_____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE